FILED
SUPERIOR COURT
OF GUAM

2026 JUN 15 PM 1:52

CLERK OF COURT

By:_____ /om_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| RAYMOND T. MANTANONA, | **CIVIL CASE NO. <u>CV0648-24</u>** |
| Plaintiff, | |
| vs. | **DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE** |
| ELSIE I. CENCIL, | |
| Defendant. | |

Plaintiff Raymond T. Mantanona ("Raymond") moves for summary judgment under Guam Rule of Civil Procedure 56(a). He also moves to strike Defendant Elsie I. Cencil's ("Elsie") March 23, 2026 Declaration and the exhibits referenced in that declaration. The Court DENIES summary judgment because the record presents genuine disputes of material fact. The Court GRANTS IN PART and DENIES IN PART the motion to strike because Elsie's Declaration was untimely and referenced exhibits that were not disclosed during discovery.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from a dispute concerning real property located in Chalan Pago, Guam. On or about February 23, 2024, Raymond and Elsie communicated about money to assist Elsie with medical care and other needs, but they dispute the legal character of that arrangement. Compl. (Nov. 27, 2024); Answer (Feb. 4, 2025).

Raymond filed a complaint in the Superior Court on November 27, 2024. Compl. He alleges that the parties entered into an agreement for the sale of Elsie's Chalan Pago property, for

ORIGINAL

$100,000, with $60,000 paid up front and the remaining $40,000 to be paid upon completion of home repairs. *Id.* Raymond did, in fact, pay $60,000 to Elsie. *Id.*, ¶ 20; Answer, ¶ I.

On April 29, 2024, Elsie and her ex-husband, Robert G. Smith, signed a Bill of Sale identifying the Chalan Pago property and included the agreement's terms: $60,000 was paid as a deposit, and $40,000 remained due upon completion of repairs. Compl., Ex. 3. All parties signed the Bill of Sale. *Id.* Raymond further alleges that Elsie later refused to complete the transfer of title, and that this refusal breached the agreement. *Id.*

Elsie disputes Raymond's account. In her Answer, counterclaims, discovery responses, Opposition, and later Declaration, Elsie states that she sought a loan from Raymond because of financial hardship and medical issues, and that Raymond agreed to assist her with repairs, insurance, mortgage matters, and tenant placement under powers of attorney. *See* Answer; Decl. George Neil P. Valdes Supp. Mot. Summ. J., Exs. A–C (Dec. 22, 2025); Opp'n Mot. Summ. J. (Feb. 12, 2026); Decl. Def. Elsie I. Cencil Opp'n Mot. Summ. J. (Mar. 23, 2026). She further states that the Bill of Sale was not intended to transfer ownership of the property. *Id.*

The record also includes three emails from Elsie. In a March 26, 2024 email, Elsie stated that she had "read and approved" the Bill of Sale, but she also said that the document was "just a formality" so her ex-husband could be put at ease and vacate the house while the parties worked on getting tenants into the property. Decl. Raymond T. Mantanona Supp. Mot. Summ. J., Ex. A (Dec. 22, 2025). In an August 9, 2024 email, Elsie asked for an update on paying off the mortgage and the remaining $40,000 balance, referred to "our agreement," and urged prompt completion and closure of the contract. Decl. Raymond T. Mantanona Supp. Mot. Summ. J., Ex. B. In an August 29, 2024 email, Elsie stated that she would relinquish her interest in the house, requested payoff of the bank loan and payment of the remaining $40,000, and said she would

ORIGINAL

sign the necessary transfer documents upon full payment. Decl. Raymond T. Mantanona Supp. Mot. Summ. J., Ex. C.

The Court issued a Scheduling Order on March 12, 2025, which, after later joint stipulations, set the discovery deadline to December 1, 2025, dispositive motion deadline to December 22, 2025, and the opposition deadline to February 12, 2026. Scheduling Order (Mar. 12, 2025); Disc. Plan & Order (Mar. 12, 2025); Joint Stip. & Order (Oct. 7, 2025); Stip. Extend Time Oppose Pl.'s Mot. Summ. J. (Jan. 23, 2026). Elsie timely filed her Opposition on February 12, 2026, but subsequently filed a Declaration in support of her Opposition on March 23, 2026, well over 30 days past the deadline. Opp'n Mot. Summ. J.; Decl. Def. Elsie I. Cencil Opp'n Mot. Summ. J.

Raymond now moves for summary judgment on his breach of contract theory. Pl.'s Mot. Summ. J. (Dec. 22, 2025). He relies on the Bill of Sale, the emails, and Elsie's interrogatory responses to argue that there is no genuine dispute that the transaction was a sale. *Id.*; Decl. George Neil P. Valdes Supp. Mot. Summ. J., Ex. A; Decl. Raymond T. Mantanona Supp. Mot. Summ. J. Elsie responds that the documents show a loan and agency arrangement, not a completed sale. Opp'n Mot. Summ. J.

Raymond separately moves to strike Elsie's March 23, 2026 Declaration and exhibits referenced in that declaration. Pl.'s Mot. Strike Def.'s Decl. & Exs. (Mar. 24, 2026); *see also* Decl. Def. Elsie I. Cencil Opp'n Mot. Summ. J. He argues that the Declaration was untimely, filed without leave of court, and relied on exhibits not disclosed during discovery. Pl.'s Mot. Strike Def.'s Decl. & Exs.

ORIGINAL

## II.  DISCUSSION OF LAW

### A.  Summary Judgment

#### 1.  Legal Standard

Summary judgment under Guam Rule of Civil Procedure 56 is appropriate only when the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  GRCP 56(a).  A dispute is genuine if the evidence would allow a reasonable factfinder to resolve the issue either way, and it is material if it could affect the outcome.  *Izuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7.

In deciding whether a genuine dispute exists, a court may consider pleadings, depositions, interrogatory answers, admissions, and affidavits.  GRCP 56(c)(1); *see also id.*; *Camacho v. Perez*, 2017 Guam 16 ¶¶ 13–14.  The non-moving party must do more than rest on allegations and must point to evidence that creates a factual dispute for trial.  *Edwards v. Pac. Fin. Corp.*, 2000 Guam 27 ¶ 7.  The Court must view the evidence in the light most favorable to the non-moving party.  *Id.*

#### 2.  Analysis

The record contains evidence that supports Raymond's position, but Elsie gives those same documents a different meaning.  The April 29, 2024 Bill of Sale identifies the property, states a purchase price of $100,000, lists a $60,000 deposit, and states that the $40,000 balance would be paid upon completion of repairs and renovation.  Compl. Ex. 3.  Raymond's Complaint and declaration state that the agreement was for a purchase of the property, not a loan, and that Elsie later refused to sign a quitclaim deed or residential purchase agreement that would have allowed refinancing and final payment.  *Id.*; Decl. Raymond T. Mantanona Supp. Mot. Summ. J.

ORIGINAL

Elsie's filings, however, draw into question the purpose of that document and the meaning of the related emails. In her Answer, interrogatory responses, Opposition, and Declaration, Elsie states that the transaction was a loan and not a sale, that Raymond was to assist with repairs, insurance, mortgage payment, and tenant placement while she was off-island and medically vulnerable, and that the Bill of Sale was only a formality. Those assertions appear throughout the record and are tied to the same documents Raymond relies on. Read in Elsie's favor, they supply a different context for the emails and the Bill of Sale.

The March 26, 2024 email is consistent with Raymond's view on its face, but it also fits Elsie's explanation of the parties' arrangement. Elsie said she had "read and approved" the Bill of Sale, but she also said the document was "just a formality" so her ex-husband could vacate and the parties could work on getting tenants into the property. Decl. of Raymond T. Mantanona, Ex. A. That email therefore supports both sides' readings of the transaction.

The August 9, 2024 email continues the same pattern. Elsie asks for an update on "our agreement," but she also referred to the mortgage, the house being rented, and the need to complete matters tied to the property. Decl. Raymond T. Mantanona Supp. Mot. Summ. J., Ex. B. Raymond reads that email as confirmation of a sale; Elsie reads it as part of an arrangement involving the property and repayment.

The August 29, 2024 email is similar. Elsie stated that she would "relinquish" her interest in the house and sign transfer documents, but she also expressed her concern about the circumstances surrounding the property and framed the message in terms of the broader dispute over the home and the personal impact of it. *Id.*, Ex. C. Taken together, the Bill of Sale and the emails allow competing interpretations of the parties' agreement.

ORIGINAL

The powers of attorney create the same kind of dispute. Raymond relies on them as support for his actions concerning the property. Elsie responds that any authority she gave was limited to administrative assistance, repairs, insurance matters, and related tasks, not a transfer of title. Decl. George Neil P. Valdes Supp. Mot. Summ. J., Ex. A. Whether Raymond acted as a buyer under a sale agreement or as an agent under limited authority presents a factual question for trial.

Finally, the parties dispute the meaning of the $60,000 payment and the absence of repayment. Raymond argues that the lack of repayment shows the payment was not a loan. Pl.'s Mot. Summ. J. Elsie responds that repayment was tied to rents and related arrangements and that Raymond controlled or benefited from the property in a way that supports her version of the agreement. Opp'n Mot. Summ. J. Those competing accounts turn on intent, course of performance, and credibility—all of which are issues that may not be resolved on summary judgment.

Because the record contains competing evidence on the nature of the transaction, the purpose of the Bill of Sale, the scope of the powers of attorney, and the intended treatment of the $60,000, Raymond has not shown that he is entitled to judgment as a matter of law. Genuine disputes of material fact remain for trial.

**B. Motion to Strike**

Raymond's Motion to Strike invokes Local Rules of the Superior Court (CVR) 7.1(f),16.4, 16.5, and 56.1(b)(2), as well as Guam Rules of Civil Procedure 37(c)(1) and 56(c)(4). Those rules allow the Court to disregard untimely filings, preclude undisclosed material, and decline to consider declarations that do not satisfy Rule 56's requirements.

ORIGINAL

Raymond is correct that Elsie filed her March 23, 2026 Declaration after the briefing deadlines had passed, after the motion had been fully briefed, and without leave of court. He is also correct that many of the exhibits referenced in that declaration were not timely disclosed during discovery, at least on the record before the Court. The Court therefore may disregard late-filed or undisclosed material.

The Court does not, however, strike Elsie's Declaration in its entirety. Much of the Declaration repeats positions that already appear in Elsie's Answer, counterclaims, interrogatory responses, and Opposition. Those filings already allege that the transaction was a loan, that the Bill of Sale was not intended to transfer ownership, and that Raymond's authority was limited to administrative assistance. The Court will not treat those core positions as newly manufactured simply because Elsie restated them in a later declaration.

The better course is to disregard any portion of the Declaration that depends solely on late-disclosed exhibits or newly raised facts, while considering the portions that duplicate what is already in the record. That approach enforces the discovery and scheduling rules without expanding the motion to strike into a merits ruling. Even with that limitation though, the record still contains genuine disputes of material fact. The ruling on the Motion to Strike therefore does not alter the denial of summary judgment.

## III.    CONCLUSION AND ORDER

For the foregoing reasons:

1.  Raymond T. Mantanona's Motion for Summary Judgment is DENIED.

2.  Raymond T. Mantanona's Motion to Strike is GRANTED IN PART and DENIED IN PART as follows:



a.  The Court will disregard any late-filed or undisclosed exhibits referenced in Elsie I. Cencil's March 23, 2026 Declaration to the extent those materials were not timely produced and are not otherwise part of the admissible record.

b.  The Court will not strike Elsie I. Cencil's Declaration in its entirety to the extent it restates factual positions already disclosed in her pleadings and discovery responses.

**SO ORDERED** this 15 June 2026.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Attorneys:
George Neil P. Valdes, Esq., Law Office of Louie J. Yanza, for Plaintiff
Vanessa Williams Cruz, Esq., Williams Cruz Law for Defendant

ORIGINAL